UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JOHNNY ROLLING,                                                :

                    Petitioner,                               :          05 Civ. 7063 (GWG)

        -v.-                                                  :

                                                                         **OPINION AND ORDER**

BRIAN FISCHER,                                                :

                    Respondent.                              :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Johnny Rolling, proceeding pro se, brings this petition for a writ of habeas corpus

challenging his April 13, 2000, conviction in the New York State Supreme Court, New York

County, for three counts of Robbery in the First Degree (New York Penal Law ("N.Y.P.L.")

§ 160.15(3)), one count of Robbery in the Second Degree (N.Y.P.L. § 160.10(2)(a)), seven

counts of Robbery in the Third Degree (N.Y.P.L. § 160.05), one count of Attempted Robbery in

the Second Degree (N.Y.P.L. § 110/160.10(2)(a)), and one count of Attempted Robbery in the

Third Degree (N.Y.P.L. § 110/160.05).  Rolling was sentenced to an aggregate prison term of 50

years to life, which was modified on appeal to 25 years to life.  The parties have consented to the

disposition of this case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For

the reasons stated below, the petition is denied.

I. INTRODUCTION

        A. Factual Background

        On April 13, 2000, Rolling was convicted, following a jury trial, of robbing or attempting

to rob nine different Manhattan nail salons on ten separate occasions between February 4 and

April 9, 1998.  See T. 1413-16.[1]  The testimony at trial established that the incidents shared

several characteristics, including: (1) the method used by the perpetrator: specifically, entering

the salon and indicating he was interested in a manicure, then demanding money from an

employee (K. S. Kim: T. 162-64; Jung: T. 186-88; H. W. Kim: T. 260-63; Haa: T. 383-91; Y. R.

Choe: T. 426-30; S. K. Kim: T. 458-62; Li: T. 551-54; I. S. Kim: T. 584-89; J. H. Kim: T. 642-

46; Henderson: T. 675-78; Kang: T. 976-77); (2) the time of day at which they occurred:

between 2:00 and 5:00 p.m.; and (3) the location of the salons: in all cases but one, on the second

floor of a building (M. H. Choe: T. 39-42; Lee: T. 95-96; K. S. Kim: T. 161-62; Yoo: T. 212-13;

H. W. Kim: T. 257-60; Y. R. Choe: T. 426-27; Li: T. 548-51; I. S. Kim: T. 582-83; J. H. Kim: T.

641-42; Henderson: T. 674-75).  In all but three of the incidents, at least one witness identified

Rolling at trial as the perpetrator.  (M. H. Choe: T. 46; Lee: T. 99-100; Ham: T. 146; S. K. Kim:

T. 168; Yoo: T. 222; H. W. Kim: T. 264-65; Haa: T. 394-95; Y. R. Choe: T. 431-32; Raber: T.

627; Johnson: T. 734; Vukaj: T. 1148).

On April 20, 1998, at 4:00 p.m., police officers arrested Rolling at his girlfriend's

apartment and brought him to the police station, where he participated in several lineups viewed

by witnesses to the salon robberies.  (Lanigan: T. 307-12, 313-37).  At around 10:00 p.m.,

Rolling was read his Miranda rights, declined to contact a lawyer, and admitted to committing

several of the robberies in order to get drug money.  (Lanigan: T. 338-42).  He then rode past

several of the salons with the officers, making inculpatory statements along the way.  (Lanigan:

T. 346-64).  At around 2:00 a.m. on April 21, Rolling complained of stomach pains, and the

[1]"T." refers to the transcript of the trial held March 27, 30, April 3, 4, 6, 10, 11, and 13,
2000.  "H." refers to the transcript of the pre-trial suppression hearing held May 13, 1999.  "S."
refers to the transcript of the sentencing held June 13, 2000.

police took him to the hospital. (Lanigan: T. 364-65). A doctor determined that Rolling was suffering from heroin withdrawal and gave him 10 milligrams of methadone. (Chiang: T. 909-15). Rolling was subsequently returned to the station house, where he participated in more lineups between 10:30 and 11:00 a.m. In the afternoon, the police asked him to make a videotaped statement, which he refused to do. He was then arraigned. (Lanigan: T. 376-77; Delaney: T. 1187-88).

During the course of the trial, Rolling's parole officer, Tanya Hubbard, testified about the type of clothing Rolling usually wore, and about her contact with police on April 20, 1998 – the day of Rolling's arrest. (Hubbard: T. 869-901).

Rolling presented no evidence in his defense.

B. Procedural History

    1. Verdict and Sentence

The jury convicted Rolling of three counts of Robbery in the First Degree, one count of Robbery in the Second Degree, seven counts of Robbery in the Third Degree, one count of Attempted Robbery in the Second Degree, and one count of Attempted Robbery in the Third Degree. (T. 1413-16). On June 13, 2000, he was sentenced as a persistent violent felony offender to an aggregate term of 50 years to life. (S. 23-25).

    2. Motion to Vacate

On October 28, 2002, while his direct appeal was pending, Rolling filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. See Notice of Motion to Vacate the Judgment, dated Oct. 2002 (reproduced as Ex. A to Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated Nov. 2, 2005 (Docket

#7) ("Opp. Decl.")).  The trial court denied this motion on February 26, 2003, on the ground that the motion raised the identical claims that had been raised on his appeal.  <u>See</u> Opinion of Hon. Michael J. Obus, dated Feb. 26, 2003 (reproduced as Ex. D to Opp. Decl.), at 2-3 (citing C.P.L. § 440.10(2)(b)).  On June 16, 2003, the Appellate Division granted Rolling leave to appeal this ruling and consolidated it with his direct appeal of the conviction.  <u>See</u> Certificate Granting Leave, dated June 16, 2003 (reproduced as Ex. E to Opp. Decl.).

   3. <u>Direct Appeal</u>

  In his direct appeal, Rolling argued through counsel that: (1) he was deprived of due process when the trial court denied his motion to sever the indictment; (2) he was deprived of due process and a fair trial when his parole officer was allowed to identify herself as such during her testimony; (3) his trial counsel was ineffective for failing to object to the parole officer's testimony; and (4) his sentence was harsh and excessive.  <u>See</u> Brief for Defendant-Appellant, dated Oct. 2002 (reproduced as Ex. F to Opp. Decl.) ("App. Br.").  The Appellate Division affirmed his conviction on January 27, 2004.  <u>People v. Rolling</u>, 3 A.D.3d 436 (1st Dep't 2004). The court held that the charges against Rolling were properly joined under C.P.L. §§ 200.20(2)(b) and (c), that Rolling received effective assistance of counsel, that the 440.10 motion was properly denied, and that Rolling's remaining contentions with respect to his parole officer's testimony were unpreserved for review.  <u>Id.</u> at 436-47.  The court did, however, find that the sentence of 50 years to life was excessive, and directed that all sentences run concurrently rather than consecutively, resulting in a new term of 25 years to life.  <u>Id.</u> at 437.

  On April 2, 2004, the New York Court of Appeals denied Rolling's application for leave to appeal.  <u>People v. Rolling</u>, 2 N.Y.3d 765 (2004).

### 4. Petition for Writ of Error Coram Nobis

On September 7, 2004, Rolling filed a petition for a writ of error <u>coram</u> <u>nobis</u>, arguing that his appellate counsel was ineffective for failing to raise the following claims: (1) that trial counsel was ineffective for failing to object to the parole officer's testimony; (2) that Rolling's confession should have been suppressed as the fruit of an illegal arrest; (3) that Rolling was denied a fair trial because of a delay in his arraignment; and (4) that the lineup procedure was suggestive and violated his right to a fair trial. <u>See</u> Memorandum in Support of Motion for a Writ of Error Coram Nobis, dated Aug. 28, 2004 (reproduced as Ex. K to Opp. Decl.) ("Coram Nobis Pet."). The Appellate Division denied this petition without opinion on March 17, 2005, <u>see</u> Ruling, dated Mar. 17, 2005 (reproduced as Ex. M to Opp. Decl.), and the Court of Appeals denied Rolling's request for leave to appeal, <u>see</u> Certificate Denying Leave, dated July 7, 2005 (reproduced as Ex. O to Opp. Decl.).

### 5. The Instant Petition

Rolling timely submitted the instant petition on July 12, 2005. <u>See</u> Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed Aug. 9, 2005 (Docket #1) ("Petition"). He raises the following grounds for relief: (1) the trial court deprived him of due process by denying his motion to sever the charges in his indictment, <u>see</u> Petition at 5-7[2]; (2) the trial court deprived him of due process by allowing his parole officer to testify and thus make the jury aware of his prior criminal record, <u>see</u> <u>id.</u> at 7-8; (3) the trial court failed to give the jury a limiting instruction about the parole officer's testimony, <u>see</u> <u>id.</u> at 10-12; (4) his trial counsel was ineffective for: failing to object to the parole officer's testimony, failing to

---

[2]The Court has added handwritten page numbers to the unnumbered pages in the Petition.

request a limiting instruction regarding that testimony, failing to challenge his conviction as the fruit of an illegal arrest, failing to challenge his delayed arraignment, and failing to challenge the police station lineups as improperly suggestive, see id. at 9-13; and (5) his appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel based on these failings, see id. at 9-14.

On November 2, 2005, Respondent filed reply papers. See Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, filed Nov. 2, 2005 (Docket #6) ("Resp. Mem."); Opp. Decl. In addition to arguing the merits of Rolling's claims, Respondent contends that Rolling failed to exhaust the claims that his trial counsel was ineffective for failing to seek suppression of his statements to police as the fruit of an illegal arrest and for failing to argue that his arraignment was unnecessarily delayed. See Resp. Mem. at 10.

Rolling submitted additional papers on December 1, 2005. See Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. 2254, dated Dec. 1, 2005 ("Pet. Reply"). Rolling does not title this submission as a reply. Rather, it appears to be an amended version of his petition, restating and expanding on the same claims. It raises no new grounds, and it does not respond directly to Respondent's papers.

II. APPLICABLE LAW

    A. Law Governing Petitions for Writ of Habeas Corpus

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (internal quotation marks and citations omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) (internal quotation marks omitted); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision.").

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409.

In addition, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

## B. Procedural Default

Where a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default constitutes an adequate and independent ground for the state court decision. See, e.g., Coleman v. Thompson, 501 U.S. 722, 729-30, 749-50 (1991). A procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" Harris v. Reed, 489 U.S. 255, 262 (1989) (citations omitted); accord Dretke v. Haley, 541 U.S. 386, 393 (2004); Coleman, 501 U.S. at 749-50; Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995); see also Harris, 489 U.S. at 264 n.10 ("[A]s long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas."). The bar on habeas review resulting from a procedural default applies even where the

state court issues an alternative holding addressing the procedurally defaulted claim on the merits.  See, e.g., Harris, 489 U.S. at 264 n.10; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam).

III.  DISCUSSION

A.  Motion to Sever Charges

Rolling claims that the trial judge should have granted his motion for severance because joining all charges for trial violated his due process rights under the Fourteenth Amendment.  He argues that the consolidation of all charges and "commingling" of evidence made it "all but impossible for the jury to evaluate each claim separately and fairly."  See Petition at 7.

To the extent that Rolling bases this claim on the New York courts' application of C.P.L. §§ 200.20(2)(b) or (c) – the statute governing what counts may be joined in an indictment – he is alleging an error of state law for which habeas relief is not available.  See Estelle, 502 U.S. at 67-68.  We thus consider only whether the denial of the motion to sever violated Rolling's federal constitutional rights.  Because the Appellate Division rejected this claim on the merits, relief is only available to Rolling if that rejection was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).

It is well-established that joinder of offenses "rises to the level of a constitutional violation only if it 'actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process.'"  Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993), cert. denied, 511 U.S. 1059 (1994) (quoting Tribbitt v. Wainwright, 540 F.2d 840, 841 (5th Cir. 1976), cert. denied, 430 U.S. 910 (1977)) (emphasis added) (alteration in original).  As the court in Herring explained:

> We have recognized that "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all." . . . Nonetheless, the Supreme Court [in <u>Spencer v. Texas</u>, 385 U.S. 554, 562 (1967)] . . . explicitly accepted that "[t]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest." . . . Thus, joinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial.

<u>Id.</u> at 377 (citations and internal quotation marks omitted). In particular, consolidated prosecutions "'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" <u>Id.</u> at 377 (quoting <u>Bruton v. United States</u>, 391 U.S. 123, 134 (1968)).

For a defendant to succeed in showing a violation of due process, the defendant must "go beyond the potential for prejudice and prove that <u>actual</u> prejudice resulted from the events as they unfolded during the joint trial." <u>Id.</u> at 377-78 (citing <u>Tribbitt</u>, 540 F.2d at 841 (joinder must "actually" render trial fundamentally unfair before habeas relief is appropriate)) (emphasis in original).

In <u>Herring</u>, the defendant was tried for two unrelated murders at the same trial. During the trial, the judge instructed the jury three separate times that the charges were independent, and that the evidence regarding one murder was not to be considered in determining whether the defendant was guilty as to the other. <u>See id.</u> at 375-76. For this reason, the court in <u>Herring</u> found that there was no showing of actual prejudice. <u>Id.</u> at 378. The court held that it must presume the jury followed these instructions "'unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of

the evidence would be devastating to the defendant.'" Id. (quoting Greer v. Miller, 483 U.S. 756, 766 n.8 (1987)) (internal citations and quotation marks omitted).

In this case, the trial court instructed the jury that "you are being asked to consider a number of separate charges of robbery arising out of 10 separate incidents . . . [and] you must make separate evaluations of the evidence relating to each incident and ultimately render a separate verdict of either guilty or not guilty under each count." (T. 1379-80). The court added, "the mere fact defendant has been accused of a number of separate crimes does not itself establish that he actually committed any one of them." (T. 1380). The court then stated the date, location, and complainants for each count charged and provided the jury with a verdict sheet separately listing each count. (T. 1398-1406). Finally, the court reiterated at the end of the charge that "you must render a separate verdict of either guilty or not guilty under each of the counts of the indictment." (T. 1408). Notably, at the start of the trial, the prosecutor had provided the jury with a chart indicating the names of each of the witnesses and the addresses and names of the salons, in order to assist the jury in keeping track of which witnesses testified about which robbery. (T. 5-15).

Rolling contends that "there was no reasonable chance" the jurors could have kept the evidence straight and separate when, of the 27 eyewitnesses to the various crimes, "26 were female, 19 were Asian and 6 had the same last name of Kim," and each "described the perpetrator differently." See Petition at 5. He also contends that "the quantum of proof differed substantially between the crimes," ranging from crimes to which Rolling confessed to crimes for which there was only eyewitness testimony. Id.

These arguments, however, constitute mere speculation. As such they do not meet

Rolling's burden of showing that there was an "overwhelming probability" that the jury was unable to follow the judge's instructions to consider each charge separately. See Herring, 11 F.3d at 378 ("because the evidence with respect to each murder was distinct and easily compartmentalized, the risk of jury confusion at petitioner's trial was significantly limited"); see also Bridgewater v. Walker, 2003 U.S. Dist. LEXIS 629, *23-*24 (S.D.N.Y. Jan. 13, 2003) (jury not confused by consolidation of offenses where it "was instructed, on at least two separate occasions, to evaluate separately the evidence presented in connection with each of the offenses"), adopted by, 2003 U.S. Dist. LEXIS 12941 (S.D.N.Y. July 28, 2003). Accordingly, Rolling's claim on this point must fail.

B. Claims Regarding Parole Officer

1. Testimony

Rolling contends that as a result of the trial testimony of his parole officer, Tanya Hubbard, the jury was made aware of his prior criminal record. See Petition at 7. He acknowledges that Hubbard "arguably had some probative testimony to offer relating to the clothing that she claimed to have observed petitioner wear during their meetings," but he argues that it was error for the court to allow her identification as his parole officer "since it served no purpose whatsoever, yet caused enormous prejudice" to him. See id. at 7, 8. Specifically, he claims that the jury "was much more likely to conclude that he was guilty because he was predisposed to commit serious criminal acts." Id. at 8.

However, Rolling's counsel did not object at trial to his parole officer's identification, and, on appeal, the Appellate Division ruled that the claim was "unpreserved" and declined to review it. Rolling, 3 A.D.3d at 437. Thus it is procedurally defaulted, and this Court must

determine whether that ruling constitutes an adequate and independent state ground for the Appellate Division's decision, barring federal habeas review of the claim.  See Coleman, 501 U.S. at 729-30, 749-50.

The Appellate Division's statement that the claim was "unpreserved" is sufficient to establish that it was relying on the procedural bar as an independent ground in disposing of this issue.  See Harris, 489 U.S. at 265 n.12.  The procedural bar applies even where, as here, the court makes an alternative ruling on the merits.  See Harris, 489 U.S. at 264 n.10; Velasquez, 898 F.2d at 9.  In addition, that the Court of Appeals issued a summary denial of leave to appeal is of no moment because where "the last reasoned opinion on the claim explicitly imposes a procedural default" – as is true of the Appellate Division's decision in this case – a federal habeas court "will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); accord Rodriguez v. Schriver, 392 F.3d 505, 511 n.10 (2d Cir. 2004).  Thus, the procedural default relied upon by the Appellate Division constituted an "independent" state law ground for the decision.

The remaining question is whether the bar is "'adequate' to preclude federal habeas review."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999).  "[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question."  Id. (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).  Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee v. Kemna, 534 U.S. 362, 386-87

(2002)).  The Second Circuit has set forth the following "guideposts" for making this

determination:

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether petitioner
> had "substantially complied" with the rule given "the realities of trial," and,
> therefore, whether demanding perfect compliance with the rule would serve a
> legitimate governmental interest.

Id. (citing Lee, 534 U.S. at 381-85).

 The first guidepost is not relevant here because "the lack of objection by a party 'would

not, almost by definition, be mentioned by the trial court.'"  Monroe v. Kuhlman, 433 F.3d 236,

242 (2d Cir. 2006) (citation omitted).  In any event, the lack of objection was "relied on" by the

trial court in the sense that, had an objection been made, it would have allowed the trial court to

review and weigh Rolling's challenge to the evidence.  Cf. Cotto, 331 F.3d at 243 (while "the

likely impact of a timely objection involves a certain degree of speculation," it is possible that

"the trial court may well have come to a different conclusion" had the reasons for the objection

been stated).

As for the second guidepost, both statutory and New York caselaw are clear that a party

must timely and specifically object in order to preserve an issue for appeal.  See C.P.L.

§ 470.05(2); People v. Nuccie, 57 N.Y.2d 818, 819 (1982); accord People v. Gray, 86 N.Y.2d 10,

19 (1995); accord People v. Fleming, 70 N.Y.2d 947, 948 (1988); People v. West, 56 N.Y.2d

662, 663 (1982).  Thus, state case law indicates that "compliance with the rule was demanded in

the specific circumstances presented."  Cotto, 331 F.3d at 240.

The final guidepost also favors the respondent.  Rolling did not "substantially comply"

with C.P.L. § 470.05 in light of the fact that he never alerted the trial court that he objected to the evidence being admitted.  In addition, the state has a strong interest in requiring parties to bring "any matter which a party wishes the appellate court to decide . . . to the attention of the trial court at a time and in a way that [gives] the latter the opportunity to remedy the problem and thereby avert reversible error."  People v. Luperon, 85 N.Y.2d 71, 78 (1995).

Thus, the Appellate Division's reliance on the state preservation rule in this instance constitutes both an adequate and independent ground for the state court decision.  Consistent with this conclusion, federal habeas courts have denied relief with respect to claims rejected as unpreserved by the New York state courts where, as here, the defendant failed to alert the trial court to the specific issue upon which he seeks review.  See, e.g., Garcia, 188 F.3d at 78-79 (citing cases); Bossett, 41 F.3d at 829 n.2; Jones v. Duncan, 162 F. Supp. 2d 204, 213 (S.D.N.Y. 2001).

Although procedurally defaulted claims are deemed exhausted for habeas purposes, an exception exists where "the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"  Harris, 489 U.S. at 262 (citations omitted); accord Coleman, 501 U.S. at 749-50; Bossett, 41 F.3d at 829.  In order to show a "fundamental miscarriage of justice," Harris, 489 U.S. at 262, a petitioner must demonstrate "actual innocence."  Calderon v. Thompson, 523 U.S. 538, 559 (1998); accord Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993), cert. denied, 510 U.S. 1078 (1994).  Rolling has made no showing of "actual innocence."  Nor has he shown any "cause" for his default – other than the claim of ineffective assistance of counsel rejected in section III.C. below.

15

Accordingly, this claim must fail.

## 2. Jury Instructions

Rolling also claims that the trial judge failed to give the jury a limiting instruction that they should disregard the parole officer's testimony. <u>See</u> Petition at 10. Specifically, he argues that the court should have directed the jury "to disregard the entire testimony of Ms. Hubbard" because it was more prejudicial than probative. <u>See</u> <u>id.</u> This claim, however, was never raised on direct appeal nor in Rolling's section 440.10 application. Thus, it is unexhausted. It would be pointless, however, to stay this suit to permit exhaustion of this claim because a federal habeas court may deem a claim to be exhausted if it would be procedurally barred under state law. <u>See</u>, <u>e.g.</u>, <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996); <u>Bossett</u>, 41 F.3d at 828-29. A claim is procedurally barred where New York's procedural rules would prevent the claim from being raised in state courts. <u>See</u> <u>Bossett</u>, 41 F.3d at 828-29.

Here, Rolling cannot attempt to file an appeal with respect to this claim because he has already utilized the one direct appeal to which he was entitled in the New York courts. <u>See</u> <u>generally</u> <u>St. Helen v. Senkowski</u>, 374 F.3d 181, 183-84 (2d Cir. 2004) (per curiam), <u>cert.</u> <u>denied</u>, 543 U.S. 1058 (2005); <u>see also</u> N.Y. Court Rules § 500.20(a) (providing for one appeal and one leave application to New York Court of Appeals); <u>Bossett</u>, 41 F.3d at 829. Furthermore, Rolling would be foreclosed from bringing this new claim in the state courts as a collateral attack on his conviction under C.P.L. § 440.10 because "sufficient facts appear on the record . . . to have permitted, upon appeal . . . , adequate review of the ground[s] . . . raised." C.P.L. § 440.10(2)(c). Thus, both claims are procedurally defaulted and habeas review is unavailable. <u>See</u>, <u>e.g.</u>, <u>St. Helen</u>, 374 F.3d at 183-84. Rolling could avoid this bar if he could

show cause for the default and resulting prejudice or could demonstrate that he is "actually innocent." See, e.g., id. As already noted, Rolling has made no showing of actual innocence. Rolling's implicit claim that the default is explained by the ineffective assistance of his counsel is rejected in the next section.

C.  Ineffective Assistance of Counsel

1.  Law Governing Claims of Ineffective Assistance of Counsel

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984). The Strickland test has been characterized as "rigorous" and "highly demanding." Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001) (internal quotation marks and citations omitted). To meet Strickland, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694; accord Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").

In evaluating the first prong – whether counsel's performance fell below an objective standard of reasonableness – "'[j]udicial scrutiny . . . must be highly deferential'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002)

(affording counsel a presumption of competence). In assessing whether an attorney's conduct was constitutionally deficient, "[t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord Pavel, 261 F.3d at 216. Concerning the second prong – whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different – a court "requires some objective evidence other than defendant's assertions to establish prejudice." Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998) (per curiam)). "A 'reasonable probability' in this context is one that 'undermine[s] confidence in the outcome.'" Pavel, 261 F.3d at 216 (quoting Strickland, 466 U.S. at 694) (alteration in original).

### 2. Ineffectiveness of Trial Counsel

Rolling contends that his trial counsel was ineffective for: (1) failing to object to his parole officer's testimony that he was on parole at the time of the robberies; (2) failing to request a limiting instruction regarding that testimony; (3) failing to seek suppression of his statements to police as the fruit of an illegal arrest; (4) failing to argue that his arraignment was unnecessarily delayed; and (5) failing to challenge the police station lineups as improperly suggestive. See Petition at 7-9, 12-14; Pet. Reply at 16-21, 25-33. Each is discussed below.

a. Parole Officer's Testimony. Rolling raised this claim on direct appeal and it was rejected on the merits. Thus he must show that the Appellate Division's ruling was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). The Appellate Division found that Rolling's trial counsel's agreement that the parole officer be identified "was clearly a strategic decision . . . because, on cross-examination, counsel elicited

matters supporting the defense that would necessarily reveal that defendant was on parole."
Rolling, 3 A.D.3d at 437 (citation omitted). Specifically, Rolling's counsel questioned Hubbard about Rolling's history of drug abuse and, in his summation, noted that the police had spoken with Hubbard, knew Rolling was a heroin user, and thus continued to question him knowing that he would start to feel sick and be more likely to sign a confession. See T. 1277-88. While this strategy was ultimately unsuccessful, it certainly falls within "the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Furthermore, Rolling comes forward with no "objective evidence" that but for this strategic decision, the outcome of his trial would have been different. See Pham, 317 F.3d at 182. He merely asserts that "the prejudice . . . was undoubtedly enormous." See Petition at 8. Thus, this claim fails.

b. Limiting Instruction. Rolling did not raise this claim – or any of the remaining claims – in his direct appeal. Nor did he raise them in his section 440.10 motion before the trial court. However, we may deny them without regard to the lack of exhaustion because they fail on the merits. See 28 U.S.C. § 2254(b)(2); Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999).

Rolling claims that his trial counsel was ineffective for failing to request an instruction "on the probative value of the testimony" of his parole officer. See Petition at 9. First, this decision might well have been sound trial strategy to avoid focusing the jury on the unhelpful aspects of the officer's testimony. Defense counsel had his own reasons to use the parole officer's testimony: specifically, to highlight the officer's testimony that Rolling had a drug addiction. (Tr. 1281-82). He then used this testimony on summation to argue that Rolling was improperly questioned when he was suffering from withdrawal symptoms. (Tr. 1281-82). Second, even if it were not sound strategy, Rolling has not shown "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Pham, 317 F.3d at 182. There was ample evidence, including Rolling's own confession, regarding his having committed the crimes charged. There is no reasonable probability that the jury would have reached a different verdict had it been given a specific instruction not to consider the fact that Rolling had been previously charged with a crime.

c. Suppression of Confession. Rolling also claims that his trial counsel was ineffective for failing to seek suppression of his statements to police as the fruit of an illegal arrest. See Petition at 13. Rolling's counsel did, in fact, move to suppress those statements during the pre-trial suppression hearing, arguing that he had been arrested without a warrant at his girlfriend's apartment, and thus that any property recovered or statements recorded as a result of that arrest should be suppressed. His counsel also argued – albeit only briefly – that the prosecution had not proved beyond a reasonable doubt that Rolling's statements had been voluntary. See H. 588-606. Thus, counsel was not ineffective in this regard.

d. Delayed Arraignment. Rolling also claims that his counsel was ineffective for failing to challenge an alleged three-day delay in his arraignment. See Petition at 13. New York law requires that an arraignment occur "without unnecessary delay." C.P.L. § 140.20(1). But it appears that the only enforcement mechanism available for this statute is to require an inmate's release prior to the arraignment "unless an acceptable explanation for the delay is given." See People ex rel. Maxian v. Brown, 77 N.Y.2d 422, 424 (1991). Thus, New York State law does not provide that a delay in arraignment means that the defendant may not be subsequently indicted or be subject to bail conditions set pursuant to that indictment. Accordingly, in

Rolling's case, it would have been pointless for counsel to make a post-arraignment motion challenging the delay in arraignment.

To the extent Rolling is arguing that counsel should have sought to suppress his confession based on the delay, counsel could properly have chosen to forgo this argument given that a delay in arraignment can be justified by an appropriate police investigation, including lineups. See, e.g., People v. Haywood, 280 A.D.2d 282, 282 (1st Dep't 2001); People v. Jones, 224 A.D.2d 334, 334 (1st Dep't 1996). Here, the police conducted such an investigation after arresting Rolling at approximately 4:00 p.m. on April 20, 1998. (Lanigan: T. 311-12). After he participated in several lineups, was read his Miranda rights, and agreed to answer questions, he confessed to several of the robberies during an hour-long interview at about 10:00 p.m. the same day. (Lanigan: T. 337-45). Following this interview, he drove around with police officers to the sites of various robberies and made inculpatory statements. (Lanigan: T. 346-64). He then fell ill, and the police took him to the hospital, where he was treated from approximately 2:30 a.m. until 6:30 a.m. on April 21. (Lanigan: T. 365-66; Chiang: T. 910-915). At about 10:30 a.m. on April 21, he participated in more lineups. (Lanigan: T. 367-74). In the afternoon, he was asked to make a videotaped statement and refused, at which point he was lodged for booking in the "late afternoon." (Lanigan: T. 376-78; Delaney T. 1189-90). Because there was no evidence that Rolling's confession was involuntary or coerced, counsel was not ineffective for choosing to forego any argument that the police acted improperly in questioning him or arranging the lineups before arraigning him. See also Haywood v. Portuando, 288 F. Supp. 2d 446, 466-67 (S.D.N.Y. 2003) ("[D]elay in arraigning a state defendant is not, in itself, a constitutional violation, but is at most a factor to be weighed in determining whether or not, viewed in the totality of the

circumstances, an incriminating statement was the product of police coercion.") (citing Holmes v. Scully, 706 F. Supp. 195, 202 (E.D.N.Y. 1989); Sklar v. Ryan, 752 F. Supp. 1252, 1264 (E.D. Pa. 1990) ("An undue delay between arrest and arraignment only gives rise to a constitutional claim when the delay results in a confession that was coerced.") (citations omitted), aff'd, 937 F.2d 599 (3d Cir. 1991).

Because there was nothing improper about the timing of Rolling's arraignment, it was not objectively unreasonable for his attorney not to raise the issue before the trial court.

e. Lineups. Rolling's claim that his trial counsel failed to challenge the lineups as improperly suggestive, see Petition at 14, is incorrect. In fact his trial counsel conducted a thorough questioning of multiple witnesses on this topic at the suppression hearing, see H. 169-72, 220-31, 413-18, 487-88, and argued that "there's simply not enough evidence to establish non-suggestiveness" of the lineups. See H. 604. Thus, this claim is without merit.

In sum, because all the claims of ineffective assistance of trial counsel fail on their merits, this ground for relief must be rejected.

### 3. Ineffectiveness of Appellate Counsel

The Strickland standard applies to claims of ineffective assistance of appellate counsel. See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.), cert. denied, 513 U.S. 820 (1994). Rolling asserts that his appellate counsel was ineffective for failing to argue: (1) that trial counsel failed to object to the parole officer's testimony; (2) that trial counsel failed to request a limiting jury instruction with regard to that testimony; (3) that trial counsel failed to argue that Rolling's statements should have been suppressed as the fruit of an illegal arrest; (4) that trial counsel failed to challenge an unnecessary delay in Rolling's arraignment; and (5) that trial

counsel failed to challenge a lineup procedure that was improperly suggestive.  <u>See</u> Petition at 9-14; Coram Nobis Pet.  The Appellate Division denied the petition in its entirety and the Court of Appeals denied Rolling leave to appeal.  Because this petition was adjudicated "on the merits," the question before us is whether that decision was contrary to or involved an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d)(1).

Among the issues Rolling's appellate counsel raised was that Rolling's trial counsel was ineffective for failing to object to the parole officer's testimony.  <u>See</u> App. Br. at 52-54.  Accordingly, this aspect of Rolling's claim is plainly meritless.  With respect to Rolling's challenges to his appellate counsel's failure to raise the remaining claims of ineffective assistance of trial counsel, these challenges fail because there can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless.  <u>See</u>, <u>e.g.</u>, <u>Deeds v. Superintendent, Eastern Correctional Facility</u>, 2006 WL 299069, at *4 (S.D.N.Y. Jan. 27, 2006) ("Since this Court concludes that trial counsel was not ineffective within the <u>Strickland</u> rule, there can be no issue of ineffective assistance on appeal."); <u>accord</u> <u>Quintana v. McCoy</u>, 2006 WL 300470, at *7 (S.D.N.Y. Feb. 6, 2006); <u>Allah v. Duncan</u>, 2003 WL 23278846, at *6 (E.D.N.Y. Dec. 11, 2003).  As discussed in the previous section, there were no grounds on which to argue that trial counsel was ineffective.  Accordingly, Rolling has failed to demonstrate that his appellate counsel's actions were objectively unreasonable under <u>Strickland</u>.  Thus, the Appellate Division's denial of his petition was not contrary to or an unreasonable application of clearly established federal law.

<u>Conclusion</u>

For the foregoing reasons, Rolling's petition is denied.  Because Rolling has not made a

23

substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the judgment would not be taken in good faith. The Clerk is requested to enter judgment.

Dated: May 2, 2006
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Johnny Rolling
00-A-3907
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5442

Chelsea Chaffee
Assistant Attorney General
120 Broadway
New York, New York 10271

substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the judgment would not be taken in good faith. The Clerk is requested to enter judgment.

Dated: May 2, 2006
     New York, New York

                                                      GABRIEL W. GORENSTEIN
                                           United States Magistrate Judge

Copies sent to:

Johnny Rolling
00-A-3907
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5442

Chelsea Chaffee
Assistant Attorney General
120 Broadway
New York, New York 10271